ACCEPTED
05-14-01223-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/20/2015 11:55:22 PM
LISA MATZ
CLERK

5th Court of Appeals
FILED: 01/21/2015
13:28:53
Lisa Matz, Clerk

## NO. 05-14-01223-CV

### IN THE COURT OF APPEALS
### FOR THE FIFTH DISTRICT OF TEXAS AT DALLAS

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
1/20/2015 11:55:22 PM
LISA MATZ
Clerk

## MICHAEL MORFORD D/B/A NEMAHA WATER SERVICES, GEOFFREY ARNOLD MCFALLS D/B/A NEMAHA WATER SERVICES, NEMAHA WATER SERVICES, L.P., NEMAHA WATER SERVICES GP, LLC, NEMAHA WATER SERVICES OK-1702, LLC, AND NEMAHA WATER SERVICES HOLDING COMPANY, LLC,

### *APPELLANTS*,

### V.

### ESPOSITO SECURITIES, LLC,

### *APPELLEES*,

### APPEAL FROM 44TH DISTRICT COURT
### DALLAS COUNTY, TEXAS

### APPELLEE'S BRIEF ON THE MERIT

**Sean Modjarrad**
State Bar No. 24027398
smodjarrad@modjarrad.com
**Rhiannon Kelso**
State Bar No: 24080636
rkelso@modjarrad.com
**M|A|S LAW FIRM**
212 W. Spring Valley Road
Richardson, Texas 75081
Tel: 972-789-1664
Fax: 972-789-1665

**David Jefrie Mizgala**
State Bar No. 24031594
david@mizgalalaw.com
**MIZGALA LAW PLLC**
Rosewood Court
2101 Cedar Springs Road, Suite 1050
Dallas, Texas 75201
Tel: 214-238-4800
Fax: 214-238-4801

### COUNSEL FOR APPELLEE-PLAINTIFF

### ORAL ARGUMENT CONDITIONALLY REQUESTED

# STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe oral argument will significantly aid the Court's decisional process. Besides being wholly unsupported by competent evidence or controlling legal authority, Appellants' Motion to Compel Arbitration and Stay Proceedings is fatally undermined by the open-court admissions Appellants made throughout the underlying proceedings.

However, to the extent the Court grants Appellants' request for oral argument, Appellee requests an opportunity to present argument also. **TEX. R. APP. P. 38.1(e), 39.7.**

# TABLE OF CONTENTS

A. The Parties' Pre-Dispute Arbitration Agreement...................................................................1

    (1) For an initial 6-month term, and thereafter until terminated by either party with 30 days prior written notice;.................................................................................................................................. 1

    (2) Appellee-Plaintiff would, if requested by Appellants-Defendants, provide Appellants-Defendants certain enumerated services; and ............................................................................... 1

    (3) Appellants-Defendants would compensate Appellee-Plaintiff for any requested services in accordance with the Agreement's "Fees and Expenses" provision.............................................. 1

B. The Disputed Transaction. ....................................................................................................2

C. Appellants' Post-Dispute Attempt to Squirm Out of Their Pre-Dispute Arbitration Agreement. ....................................................................................................................................3

    (1) first, filed a "Statement of Claim" with the Financial Industry Regulatory Authority ("FINRA"), a self-described "forum for securities dispute resolution … involving customers of brokerage firms and disputes between brokerage firms and their employees[,]" 1 CR at 230;.............................................................................. 3

    (2) then, more than a month later, moved the trial court to compel Appellee-Plaintiff to abandon the AAA arbitration in favor of Appellants-Defendants' later-filed FINRA action, 1 CR at 131-35 ("Defendants' Response to Plaintiff's Motion to Compel Arbitration and Stay Proceedings"), at 136-41 ("Defendants' Motion to Compel Arbitration and Stay Proceedings"); *see also* Appellant's Brief at 5 ("In response to [Appellee-Plaintiff's] suit," [Appellants-Defendants] "filed a declaratory judgment action before FINRA" and "moved for arbitration before [] FINRA.")................................................................................................................ 3

    (1) contracting parties may effectively agree to "opt out" of Rule 12200's mandatory FINRA arbitration provision, 2 RR at 20:3-16; ...................................................................................................... 4

    (2) they signed the Agreement containing the pre-dispute arbitration clause without objection, 2 RR at 11:23-25;....................................................................................................................... 4

    (3) to invoke Rule 12200's mandatory arbitration provision, claimants must be "customers" complaining of a dispute arising from the business activities the named FINRA member(s), 4 RR at 19:2 – 20:17;.................................................................................................................................................... 5

    (4) persons who do not purchase goods or services from, and do not have a brokerage account with, a FINRA member does not qualify as that member's "customers," as that term is contemplated by FINRA's Rules, 3 RR at 21:18-23; 4 RR at 24:14-16; and .......................................... 5

    (5) the Statement of Claim Appellants-Defendants filed with FINRA avows the disputed Transaction did not involve the purchase of any goods or services from Appellee-Plaintiff or a brokerage account, as Appellants-Defendants never opened such an account, 3 RR 20:22 - 21: 23; 4 RR 25:6 - 33: 18.................................................................................................................................... 5

A. Settled Texas Law Establishes This Court's Review of the Trial Court's Order Is Governed By the No-Evidence Standard of Review. ...................................................................6

B. Appellants' Argued-For Application of the De Novo Standard of Review Is Contrary to Texas Law. ...................................................................................................................................7

I. The Trial Court Properly Refused to Grant Appellants' Factually Deficient and Legally Unsupported Motion to Compel Arbitration ............................................................. 10

A. Appellants' Motion to Compel Arbitration Is Completely Devoid of Evidentiary Support and Thus Fails On Its Face.......................................................................................10

B. Appellants' Motion to Compel Grossly Misconstrues FINRA Rules...................................11

    1. Appellants' Argued-For Interpretation of "Customer" Belies Their Result-Oriented Analysis. ........................................................................................................................................... 12

    2. More than a scintilla of record evidence supports the trial court's determination Appellants are not "customers," as defined by FINRA's Rules. .................................................... 14

    (1) the disputed Transaction that is the subject of Appellants-Defendants' FINRA statement of claim does not involve the purchase of any goods or services from Appellee-Plaintiff, 4 RR at 17:4-7; and.............................................................................................................................................14

    (2)    Appellants-Defendants do not know of a single case in which a person was determined to be a "customer" without actually purchasing goods and services from the FINRA member, 3 RR at 20:9-17. ............................................................................................................................................ 14

**C.    Appellee's Argument before the trial court: A Rule 12200 "customer" of a FINRA member can only demand arbitration before FINRA absent a separate arbitration agreement.** ................................................................................................................................................... **15**

**D.    RECENT (AUGUST 21, 2014) SECOND CIRCUIT DECISIONS HOLD FORUM SELECTION CLAUSES SUPERSEDE ANY ARBITRATION AGREEMENT CREATED BY FINRA RULE 12200. 18**

    1.    Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 764 F.3d 210, 2014 U.S. App. LEXIS 16155 (2d Cir. 2014): An Agreement to Arbitrate Under FINRA may be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract.......................................................................................................................................................... 18

    2.    Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 764 F.3d 210, 2014 U.S. App. LEXIS 16155 (2d Cir. 2014): An "all inclusive" and "mandatory" superseding arbitration clause is grounds for revocation of the contractual agreement to arbitrate created by FINRA Rule 12200. ...................................................................................................................................................... 20

**E.    Status as a "customer" for purposes of FINRA Rule 12200 has never been determined by merely examining "the face of the Agreement.".** .............................................................................. **23**

**F.    Federal Appellate Courts Have Rejected Appellants' Contention that there is a presumption favoring FINRA Arbitration.** ....................................................................................... **24**

**G.    General Rules of Contract Interpretation Favor Arbitration Before the American Arbitration Association (AAA)** .................................................................................................................. **26**

**H.    Precedent does not exist requiring construing facts in favor of finding a party is a "customer" for purposes of FINRA Rule 12200** ......................................................................................... **28**

**I.    APPELLANTS DO NOT PRESENT A VIABLE ARGUMENT THAT APPELLANTS ARE CUSTOMERS FOR PURPOSES OF FINRA RULE 12200 AND APPLICABLE CASE PRECEDENTS**     **29**

    1.    The unexplained "disjunctive" between account holders and purchases of goods and services ................................................................................................................................................................ 30

    2.    Appellants state, but do not support, the contention that the contingent nature of the parties payment agreement is irrelevant for purposes of determining whether Appellants are Rule 12200 "customers." ...................................................................................................................................... 31

    3.    There is no case law, much less a "superabundance of case law" holding financial agreements similar to that between Appellants and Appellee are sufficient to create a customer-member relationship for FINR Arbitration purposes ................................................................ 32

    4.    Cases cited by Appellants involve Financial Agreements for the issuance and underwriting of Auction Rate Securities (ARS) ...................................................................................................................... 33

**II. Sun Capital's Purposeful Contacts with Texas Gave Rise to Appellees' Asserted Claims and Thus Support the District Court's Exercise of Specific *In Personum* Jurisdiction Over Appellants.** ........................................................... Error! Bookmark not defined.

# INDEX OF AUTHORITIES

# ABBREVIATIONS AND RECORD REFERENCES

| Abbreviations | |
|---|---|
| **"Appellants-Defendants"** | "Appellants-Defendants" refers collectively to MICHAEL MORFORD d/b/a NEMAHA WATER SERVICES, GEOFFREY ARNOLD MCFALLS d/b/a NEMAHA WATER SERVICES, NEMAHA WATER SERVICES, L.P., NEMAHA WATER SERVICES GP, LLC, NEMAHA WATER SERVICES OK-1702, LLC, and NEMAHA WATER SERVICES HOLDING COMPANY, LLC |
| **"Appellee-Plaintiff"** | "Appellee=Plaintiff" refers to ESPOSITO SECURITIES, LLC. |
| **"Agreement"** | "Agreement" refers to the May 1, 2013 engagement letter between Nemaha Water Services and Esposito Securities, LLC. |

**Record References**

References to the reporter's record in the form:  [Vol] RR at [page #].

References to the clerk's record are in the form: 1 CR at [page #]

| | |
|---|---|
| *Nature of the Case:* | Appellee-Plaintiff initiated the underlying action, *Esposito Securities, LLC v. Michael Morford d/b/a Nemaha Water Services et al.*, Cause No. DC-14-05795, In the 44th District Court, Dallas County, Texas, to enforce a pre-dispute arbitration agreement. **1 CR at 27-108; 2 RR at 20:11-16; 3 R at 19:7-10.**<br><br>Appellants-Defendants conceded the underlying dispute must be arbitrated; however, they resisted the contractually specified arbitration forum (the American Arbitration Association). **2 RR at 7:10-19.** In response to Appellee-Plaintiff's Motion to Compel Arbitration before the AAA, Appellants-Defendants filed a separate cross-motion to compel arbitration before Financial Regulatory Authority (FINRA). **1 CR at 136-41.** |
| *Course of Prior Proceedings:* | The trial court presided over three different open-court hearings on the issues raised in the parties' competing motions to compel. ***See generally* RR Vols. 1-3**. The court conducted a fourth hearing on Appellants-Defendants' Motion to Reconsider Order Grating Plaintiff's Motion to Compel Arbitration to AAA. **1 CR at 298-301;** *see also generally* **RR Vol. 4**. |
| *District Court's Disposition* | The trial court granted Appellee-Plaintiff's Motion to Compel Arbitration before the AAA, **1 CR at 292-94**, and denied Appellants-Defendants' motion to reconsider that order, **1 CR at 362**. |

# RESTATEMENT OF ISSUES PRESENTED

Appellants-Defendants admit below and on appeal: (1) only a FINRA member's "customers" may invoke FINRA Rule 12200's mandatory arbitration procedures; (2) a FINRA member's "customers" are "persons" who purchase FINRA-regulated goods or services from a FINRA member; but in this case, (3) the lone claim they seek to compel Appellee-Defendant to arbitrate before FINRA does <u>not</u> concern goods or service purchased from a FINRA member.

On this state of the appellate record, did Appellants satisfy their burden on appeal to prove there is no evidence to support the trial court's determination that Appellants-Defendants failed to prove the disputed transaction is subject to FINRA's mandatory arbitration procedures?

This case is about Appellants' discontent with the trial court's order enforcing their pre-dispute arbitration agreement to resolve "[a]ny claim or controversy arising out of or relating to" their contract with Appellee-Plaintiff by binding arbitration before the American Arbitration Association.

## A.     The Parties' Pre-Dispute Arbitration Agreement.

Appellants-Defendants and Appellee-Plaintiff executed the letter agreement (the "Agreement") from which the underlying dispute arises on May 1, 2013. **1 CR at 32-38**. Pursuant to that Agreement, Appellants-Defendants and Appellee-Plaintiff provisionally agreed:

(1)     For an initial 6-month term, and thereafter until terminated by either party with 30 days prior written notice;

(2)     Appellee-Plaintiff would, if requested by Appellants-Defendants, provide Appellants-Defendants certain enumerated services; and

(3)     Appellants-Defendants would compensate Appellee-Plaintiff for any requested services in accordance with the Agreement's "Fees and Expenses" provision.

1 CR at 32-33, ¶¶ A-B, D.

The parties unconditionally agreed, however, that "any claim or controversy arising out of or relating to th[e] Agreement, or the breach thereof, shall be settled

---

[1]     Because Appellants "Statement of Facts" fails to include pertinent facts necessary to a full and fair consideration of the issue they present in Appellant's Brief, Appellees present the following Statement of Facts. *See* TEX. R. APP. P. 38.2(a)(1)(B).

by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association[.]" **1 CR at 35, ¶ K**.

## B.     The Disputed Transaction.

In mid-to-late February 2014, Appellants-Defendants revealed to Appellee-Plaintiff, for the first time, that they (Appellants-Defendants) had secretly been working with a third party to secure approximately $8,100,000.00 financing to purchase a substantial portion of another company's assets (the "Transaction").[2] **1 CR at 100-01, ¶ 19** (Affidavit of Jared Behnke); **1 CR at 115, ¶¶ 4-6** (Defendants' Original Counterclaim).

After learning about the Transaction, Appellee-Plaintiff notified Appellants-Defendants that, because it occurred within the contract term,[3] the Transaction entitled Appellee-Plaintiff to "a Transaction fee [] equal to five percent (5%) of the

---

[2]     By the Agreement's express terms, Appellants-Defendants agreed Appellee-Plaintiff would "serve as the exclusive financial advisor of the Company with respect to a possible sale or recapitalization of the Company that is accomplished in one or a series of transactions involving … "any exchange or tender offer, merger, consolidation or other business combination involving the Company; or any recapitalization, reorganization, restructuring or other similar transaction involving the Company." **1 CR at 32**.

[3]     Paragraph D of the Agreement provides, in relevant part:

[Appellee-Plaintiff] shall be entitled to the full amount of the Transaction Fee in the event an agreement is entered into with respect to a Transaction at any time within one year from the date of any such expiration or termination with any party (i) identified in writing by [Appellee-Plaintiff] as a potential party to a Transaction during Esposito Securities' engagement hereunder, (ii) with whom the [Appellants-Defendants] had any discussions regarding a potential Transaction during [Appellee-Plaintiff's] engagement hereunder regardless of whether such discussions were initiated by [Appellee-Plaintiff], or (iii) who proposed or to whom the Company proposed a Transaction during Esposito Securities' engagement hereunder.

**1 CR at 33, ¶ D**.

[Transaction's] total consideration[.]" **1 CR at 33, ¶¶ B, D**; **1 CR at 100-01, ¶¶ 19-22**; *see also* **Appellant's Brief at 4** ("After learning of this deal, Esposito sent Nemaha a demand for $405,000, claiming it was entitled to such fee under the Agreement ….").

## C.    Appellants' Post-Dispute Attempt to Squirm Out of Their Pre-Dispute Arbitration Agreement.

When Appellants-Defendants balked on their contractual payment obligation, Appellee-Plaintiff initiated the underlying trial court proceedings to enforce the Agreement's pre-dispute arbitration clause. **1 CR at 6, ¶ 1** ("Plaintiff submits this action for the purpose of compelling arbitration[.]"); **1 CR at 27-108** ("Motion to Compel Arbitration and Stay Proceedings").

Appellants-Defendants refused to abide by their pre-dispute commitment to resolve the disputed Transaction in binding arbitration before the AAA; instead, they:

(1)     first, filed a "Statement of Claim" with the Financial Industry Regulatory Authority ("FINRA"), a self-described "forum for securities dispute resolution … involving customers of brokerage firms and disputes between brokerage firms and their employees[,]" **1 CR at 230**;

(2)     then, more than a month later, moved the trial court to compel Appellee-Plaintiff to abandon the AAA arbitration in favor of Appellants-Defendants' later-filed FINRA action, **1 CR at 131-35** ("Defendants' Response to Plaintiff's Motion to Compel Arbitration and Stay Proceedings"), **at 136-41**("Defendants' Motion to Compel Arbitration and Stay Proceedings"); *see also* **Appellant's Brief at 5** ("In response to [Appellee-Plaintiff's] suit," [Appellants-Defendants] "filed a declaratory judgment action before FINRA" and "moved for arbitration before [] FINRA.").

3

In alleged support of the foregoing filings, Appellants-Defendants generally cite FINRA Rule 12200[4] as the source of their purported right: (1) unilaterally to vitiate their pre-dispute commitment to arbitrate before the AAA; and (2) judicially force Appellee-Plaintiff to: (a) abandon its earlier-filed AAA action, and (b) settle the underlying dispute in an entirely different arbitral forum, governed by entirely different rules, than the parties' Agreement requires. **1 CR at 132-33, 137-39, 226, 243.**

During the three hearings before the trial court, however, Appellees-Defendants conceded:

(1) contracting parties may effectively agree to "opt out" of Rule 12200's mandatory FINRA arbitration provision, **2 RR at 20:3-16**;

(2) they signed the Agreement containing the pre-dispute arbitration clause without objection, **2 RR at 11:23-25**;

---

[4] In its entirety, Rule 12200 states:

**12200. Arbitration Under an Arbitration Agreement or the Rules of FINRA**

Parties must arbitrate a dispute under the Code if:

• Arbitration under the Code is either:

(1) Required by a written agreement, or

(2) Requested by the customer;

• The dispute is between a customer and a member or associated person of a member; and

• The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

**FINRA Rule 12200**.

(3) to invoke Rule 12200's mandatory arbitration provision, claimants must be "customers" complaining of a dispute arising from the business activities the named FINRA member(s), **4 RR at 19:2 – 20:17**;

(4) persons who do not purchase goods or services from, and do not have a brokerage account with, a FINRA member does not qualify as that member's "customers," as that term is contemplated by FINRA's Rules, **3 RR at 21:18-23**; **4 RR at 24:14-16**; and

(5) the Statement of Claim Appellants-Defendants filed with FINRA avows the disputed Transaction did not involve the purchase of any goods or services from Appellee-Plaintiff or a brokerage account, as Appellants-Defendants never opened such an account, **3 RR 20:22 - 21: 23; 4 RR 25:6 - 33: 18**.

After considering the parties' cross-motions, responses, pleadings on file, and arguments of counsel, the trial court granted Appellee-Plaintiff's Motion to Compel Arbitration, and order the parties' dispute to be determined by arbitration before the AAA. **1 CR at 292-94**. Appellants-Defendants did not request, and the trial court did not make or enter Findings of Facts and Conclusions of Law in support of its arbitration order. ***See generally* 1 CR at 2-4** (Index of Clerk's Record).

This appeal/alternative mandamus action followed.

## STANDARD OF REVIEW

**A.   Settled Texas Law Establishes This Court's Review of the Trial Court's Order Is Governed By the No-Evidence Standard of Review.**

This Court reviews trial-court orders denying motions to stay litigation and compel arbitration under the "no evidence" standard. *Phillips v. ACS Mun. Brokers, Inc.*, **888 S.W.2d 872, 874 (Tex. App.—Dallas 1994, no writ)** (citing *Hearthshire Braeswood Plaza Ltd. P'Ship v. Bill Kelly Co.*, **849 S.W.2d 380, 384 (Tex.App.—Houston [14th Dist.] 1993, writ denied))**.

Under that standard, this Court must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *In re Trammell*, **246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.)** (citing *Kroger Tex. Ltd. v. Suberu*, **216 S.W.3d 788, 793 (Tex. 2006)** (legal sufficiency review of jury verdict); *City of Keller v. Wilson*, **168 S.W.3d 802, 807 (Tex. 2005)** (legal sufficiency review of summary judgment)).

Appellants-Defendants' no-evidence point of error must be overruled unless they demonstrate: (1) there is a complete absence in the record of evidence of a vital fact; (2) the rules of law or of evidence bar the Court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively

establishes the opposite of the vital fact. *Id.* (citing **Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003)**; *City of Keller v. Wilson*, **168 S.W.3d at 809**).[5]

When, as here, the record contains no findings of fact and conclusions of law, the Court may affirm the trial court's judgment on any legal theory the evidence supports. *Phillips v. ACS Mun. Brokers, Inc.*, **888 S.W.2d at 874** (citing *Lute Riley Motors, Inc. v. T.C. Crist, Inc.*, **767 S.W.2d439, 440 (Tex. App.— Dallas 1988, writ denied)**; *Hearthshire Braeswood*, **849 S.W.2d at 384**).

**B.    Appellants' Argued-For Application of the De Novo Standard of Review Is Contrary to Texas Law.**

Appellants-Defendants expressly acknowledge the foregoing deferential standard of review generally governs appellate courts' review of trial-court orders denying motions to compel arbitration. *See* **Appellants' Brief at 9** (citing **Schlumberger Technology Corp. v. Baker Hughes Inc., 355 S.W.3d 791, 800 (Tex. App.—Houston [1st Dist.] 2011,no pet.)**). Nonetheless, they urge this Court to review the trial court's complained-of order *de novo*. **Appellants' Brief at 9**.

---

[5]    However, when the facts relevant to the arbitration issue are not disputed,  an appellate court is presented only with issues of law and reviews the trial court's order *de novo*. *In re Trammell*, **246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.)** (citing *Dewey v. Wegner*, **138 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2004, no pet.)**).

Appellants-Defendants ass the for argued-for application of the *de novo* standard of review is that "facts surrounding the determination of whether" they proved themselves to be "customers," FINRA Rules—"are undisputed"; thus, contend Appellants-Defendants, "the only disputed question before this [C]ourt is purely legal in nature." **Appellants' Brief at 9**.

Tellingly, but problematically, Appellants-Defendants make no attempt to support their bald proposition with record references or citations to legal authority. See Appellants' Brief at 9. What's more, they conceal from the Court the fact that their counsel's expressly acknowledged in open court: (1) there is no "overriding law of the land" for determining whether someone qualifies as a "customer," **2 RR at 35:11 – 36:7**; (2) such determinations have been historically resolved on an ad hoc, case-by-case basis, **2 RR at 36:5-78**; (3) precedent exists which limits the meaning of "customer" to instances in which the would-be customer actually purchases FINRA-regulated goods or services from, or opens a brokerage account with, a FINRA member, **3 RR at 10:18 – 11:6**; and (4) the Statement of Claim Appellants-Defendants filed with FINRA Appellants-Defendants' Statement of Claim wFINRA action contention that the disputed Transaction is

## SUMMARY OF THE ARGUMENT

Appellants-Defendants attack the trial court's August 24, 2014 Order Granting Plaintiff's Motion to Compel Arbitration (the "Arbitration Order") on one limited ground: "[T]he trial court erred in finding Appellants were not 'customers' of Appellee under the Rules of the Financial Industry National Regulatory Authority (FINRA), and erred in denying Appellants' motion to compel arbitration on that basis[.]" **Appellants' Brief at xii**; *see also* **Appellant's Brief at 9** ("The dispositive question before this Court is whether the trial court erred in denying Appellants' motion to compel arbitration based on a finding that [they were] not [] 'customer[s].'").

Not only does the record support the trial court's conclusion about Appellants-Defendants' lack of competent evidence and controlling legal authority to support their bald assurances about their FINRA "customer" status, it reveals the trial court's judgment is sustainable on numerous grounds Appellants-Defendants do not challenge. Accordingly, as explained more fully below, Appellants-Defendants' appeal/alternative mandamus petition must fail.

## ARGUMENT

### I.

### THE TRIAL COURT PROPERLY REFUSED TO GRANT APPELLANTS' FACTUALLY DEFICIENT AND LEGALLY UNSUPPORTED MOTION TO COMPEL ARBITRATION

**A.** **Appellants' Motion to Compel Arbitration Is Completely Devoid of Evidentiary Support and Thus Fails On Its Face.**

Texas law is well settled: "To compel arbitration, a party must establish: (1) the existence of a valid agreement to arbitrate and (2) the claims asserted [] are within the scope of the arbitration agreement." ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Williams*, No. 05-97-01481-CV, 1998 WL 155454 (Tex. App.—Dallas Apr. 6, 1998, no pet.) (not designated for publication)**.

In this case, Appellants-Defendants moved to compel arbitration with FINRA in response to, and as an attempt to defeat, Appellee-Plaintiff's Motion to Compel Arbitration before the AAA. *See* Appellants' Brief at 5 ("In response to Esposito's suit, Nemaha move for arbitration before [] FINRA."). Thus, to prevail in the trial court proceedings, Appellants-Defendants bore the burden to "controvert the [Appellee-Plaintiff's] claims by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding." ***See Tex. Capital Bank, N.A. v. Automaker, Inc.*, No. 14-94-0069-CV, 1995 WL 472346, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 10, 1995, no writ) (not designated for publication)** (citing **Prudential Securities Inc. v. Banales, 860 S.W.2d 594, 597 (Tex. App.—Corpus Christi 1993, orig. proceeding)**).

10

Nowhere in Appellants-Defendants' Motion to Compel do they cite or otherwise attempt to incorporate any evidence of an agreement between the parties to arbitrate any dispute with FINRA. **1 CR at 136-41**. Instead, Appellants-Defendants merely point to FINRA Rule 12200 and contend:

> As Plaintiff is a members of FINRA and/or associated persons of a member at the time of the issues that are the subject of this claim, the Defendants are customers, the dispute is in connection with the business activities of the member and associated persons that does not involve insurance and the customer is requesting arbitration under the Code, the parties *must* arbitrate under the Code.

**1 CR at 137-38, ¶ 4** (emphasis in orig.).

This Court's precedent makes plain, however, that Appellee-Plaintiff's obligation to arbitrate with a customer in accordance with FINRA Rule 12200 is not a proxy for, and thus does not establish, the existence of an independent and valid written agreement between Appellee-Plaintiff and Appellants-Defendants to arbitrate before FINRA. ***See Phillips v. ACS Mun. Brokers, Inc.*, 888 S.W.2d 872, 875-76 (Tex. App.—Dallas 1994, no writ)**.

Because Appellants-Defendants fail to allege the existence of any other agreement to arbitrate before FINRA, it is axiomatic that their motion to compel fails on its face. ***See generally* discussion *supra*.**

B.    **Appellants' Motion to Compel Grossly Misconstrues FINRA Rules.**

But even supposing, for argument's sake alone, FINRA Rule 12200 could serve as a surrogate arbitration agreement, Appellants-Defendants readily admit

11

that Rule only applies to disputes: (1) between a FINRA member and its customers; and (2) which arise "in connection with the business activities of the member[.]" **Appellants' Brief at 10** (quoting FINRA Rule 12200). Accordingly, insofar as FINRA Rule 12200 applies, Appellants-Defendants could not prevail on their motion to compel without first establishing: (1) they are Appellee-Plaintiff's "customers"; and (2) the disputed Transaction "arises in connection with [Appellee-Plaintiff's] business activities." ***See id.*** They failed conclusively to establish either.

### 1. *Appellants' Argued-For Interpretation of "Customer" Belies Their Result-Oriented Analysis.*

Appellants-Defendants purportedly recognize that arbitration rules are interpreted according to ordinary contract construction principles. **Appellants' Brief at 11**. In seeking to ascertain whether they qualify as "customers" under FINRA's Rules, however, Appellants-Defendants do not begin their analysis by examining FINRA's Rules' actual text. **Appellants' Brief at 12**. Instead, they begin with the wholly unsupported assumption that their "customer" status must be ascertained from "the face of the Agreement." **Appellants' Brief at 12** (citing nothing).

With those parameters set, Appellants-Defendants next disavow the Rules' text for being insufficiently explicit before finally settling on a recent Second Circuit decision that "broadly define[s] 'customer' [a]s 'one who, while not a

broker or dealer, either (1) purchases a good or service from a FINRA member, *or* (2) has an account with a FINRA member." **Appellants' Brief at 12** (emphasis by Appellants) (quoting *Citigroup Global Markets Inc. v. Abbar*, **761 F.3d 268, 275 (2d Cir. 2014)**).

Without further analysis or authority, Appellants declare that the "disjunctive" word "or" is somehow "instructive and leaves no doubt that [they] w[ere] [] customer[s] because, under the Agreement[, they were] purchasing a service from [Appellee-Plaintiff], even though [they] did not have an investment or trading account there." **Appellants' Brief at 13** (citing nothing).

In an apparent attempt to prove to this Court they did, in fact, make purchases under the Agreement, Appellants-Defendants recite the services they could have, but did not, request Appellee-Plaintiff to perform. *Compare* **Appellant's Brief at 13** (listing services), **with 4 RR at 17:4-7** (responding to the trial court's question about services purchased from Appellee-Defendant relating to the disputed Transaction, Appellants-Defendants stated: "Nothing.").

Besides constituting little more than Appellants-Defendants' *ipse dixit*, the foregoing analysis completely disregards the applicable standard of review.

*2.* ***More than a scintilla of record evidence supports the trial court's determination Appellants are not "customers," as defined by FINRA's Rules.***

When, as here, the trial court conducted evidentiary hearings on a disputed issue of fact, the question on appeal is whether—viewed in the light most favorable to the judgment—there is more than a scintilla of evidence to support the trial court's judgment. *In re Trammell*, **246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.)** (citing *Kroger Tex. Ltd. v. Suberu*, **216 S.W.3d 788, 793 (Tex. 2006)** (legal sufficiency review of jury verdict); *City of Keller v. Wilson*, **168 S.W.3d 802, 807 (Tex. 2005)** (legal sufficiency review of summary judgment)).

In the proceedings below, in response to the trial court's questioning, Appellants-Defendants expressly admitted:

(1)  the disputed Transaction that is the subject of Appellants-Defendants' FINRA statement of claim does not involve the purchase of any goods or services from Appellee-Plaintiff, **4 RR at 17:4-7**; and

(2)  Appellants-Defendants do not know of a single case in which a person was determined to be a "customer" without actually purchasing goods and services from the FINRA member, **3 RR at 20:9-17**.

Because these admissions are some evidence that Appellants-Defendants do not satisfy FINRA Rule 12200's definition of customer, the trial court's judgment must be sustained.

**C.** **Appellee's Argument before the trial court: A Rule 12200 "customer" of a FINRA member can only demand arbitration before FINRA absent a separate arbitration agreement.**

Essentially, The Code of Arbitration Procedure contained in the FINRA Rules (the Code) provides in Rule 12200 that parties must arbitrate a dispute if certain conditions are met. However, in addition, the United States Courts of Appeals for the Second and Fourth Circuits further expanded said conditions. In February of 2013, the Second Circuit held that a party can only compel a FINRA member to FINRA arbitration under Rule 12200, **absent a separate arbitration agreement**.[6]

First, Appellants' brief conveniently leaves out the 4th Circuit's opinion, which was issued nearly two years ago, has no negative analysis, and has been cited by Federal district courts and appellate courts across the country.[7] Second, Appellants make a patently false statement in their Brief that "it has been long established that under FINRA Rule 12200, a dispute between a FINRA member and a customer grants the customer, as a matter of contract, the option to select

---

[6] *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 565 (4th Cir. 2013).

[7] *See Raymond James Fin. Servs. v. Cary*, 709 F.3d 382 (4th Cir. Va. 2013); *Credit Suisse Sec. (USA) LLC v. Sims*, 2013 U.S. Dist. LEXIS 143712 (S.D. Tex. Oct. 4, 2013); *Citigroup Global Mkts. Inc. v. Abbar* , 943 F. Supp. 2d 404 (S.D.N.Y. 2013); *Tradestation Secs., Inc. v. Capone*, 2014 U.S. Dist. LEXIS 51876 (W.D.N.C. Apr. 10, 2014)

FINRA as an arbitral forum regardless of whatever might be provided in the agreement."[8]

Third, Appellants actually go on to claim, "[t]his matter of law was not contested below."[9] This matter of law was brought to Appellant's attention at the initial hearing on August 22, 2014 and at the Re-hearing on August 26, 2014.

In Appellee's Brief in Support of Plaintiff's Response to Defendant's Motion to Compel, Appellee submitted the following argument to the 44th District Court on August 26, 2014 prior to the re-hearing, "[i]n *Morgan Keegan & Co. v. Silverman*, the United States Court of Appeals for the Fourth Circuit, stated that:

'**in the *absence* of a separate arbitration agreement, *a party can* compel a Financial Industry Regulatory Authority (FINRA) member to participate in FINRA arbitration** if: (1) the party is a "Customer" of the FINRA member; and (2) there is a dispute between the "Customer" and the FINRA member, or the member's associated person, arising in connection with the business activities of the FINRA member or a member's associated person.'"[10]

In this cause, Appellants have stipulated on the record that they signed and entered into the May 1, 2013 contractual Agreement.[11] Said Agreement, and the

---

[8] See Appellant Brief, Page 11, Par. 2

[9] See Appellant Brief, Page 11, Par. 2

[10] *Morgan Keegan & Co.*, 706 F.3d at 563.

[11] See generally RR Vol. 2.

16

arbitration agreement therein, constitutes a separate arbitration agreement.[12] The

FINRA Office of Hearing Officers has expressly recognized that FINRA's

arbitration rules "themselves constitute an agreement to arbitrate that is covered by

the FAA, even separate from a customer-member agreement," essentially

recognizing that such an agreement can exist.[13]

The Court in *Morgan Keegan*, expressly recognized that a party, specifically

a party that qualifies as a "customer" under FINRA Rule 12200, may only compel

a FINRA Member to FINRA Arbitration, absent an arbitration agreement separate

from the arbitration agreement automatically created by FINRA's arbitration rules.

Here, the parties are not absent a separate agreement,[14] and as per the ruling of the

Fourth Circuit Court of Appeals, Nemaha Defendants *cannot* compel FINRA

Member Esposito to FINRA Arbitration.[15]

---

[12] *See* Exhibit B, para.K.

[13] Teresa J. Verges, *Opening the Floodgates of Small Customer Claims in FINRA Arbtiration: FINRA v. Charles Schwab & Co., Inc.,* 15 CARDOZO J. CONFLICT RESOL. 623 (2014) (citing Complaint and Request for expedited Hearing 12-14, FINRA Office of Hearing Officers, Dep't of Enforcement v. Charles Schwab & Co., Disciplinary Proceeding No. 2011029760201 (Feb. 1, 2012), *available at*, http://disciplinaryactions.finra.org/viewdocument.aspx?DocNB=29288).

[14] *See* Exhibit B, para. K.

[15] *Morgan Keegan & Co.*, 706 F.3d at 563.

**D. RECENT (AUGUST 21, 2014) SECOND CIRCUIT DECISIONS HOLD FORUM SELECTION CLAUSES SUPERSEDE ANY ARBITRATION AGREEMENT CREATED BY FINRA RULE 12200.**

The initial hearing on the parties' cross-Motions to Compel Arbitration was held before the 44th District Court on August 22, 2014, the re-hearing was held on August 26, 2014 and the Appellant-Defendant's Motion to Reconsider the Order Compelling the parties to Arbitration before the A.A.A., was held on September 9, 2014. The below cases were decided on August 21, 2014, prior to the initial hearing, but the decision was not published until (waiting on lexis to advise date).

*1.* ***Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 764 F.3d 210, 2014 U.S. App. LEXIS 16155 (2d Cir. 2014): An Agreement to Arbitrate Under FINRA may be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract.***

The Second Circuit's single opinion (disposing of two cases on August 21, 2014) on the issue of separate forum selection agreements in cases involving FINRA arbitration demanded by Rule 12200 "customers," held that FINRA arbitration rules may be superseded by forum selection clauses.[16] In both district court cases, the status of the non-FINRA member party as a Rule 12200 "customer" was undisputed. Where the FINRA members had been retained to (and in fact did) issue millions of dollars in Auction Rate Securities ("ARS"), the parties were indeed deemed Rule 12200 "customers." Issuance and underwriting of ARS

---

[16] *See, Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.,* 764 F.3d 210, 2014 U.S. App. LEXIS 16155 (2d Cir. 2014) (Hereafter "*Golden Empire Schools*").

18

has long been held to establish a member-customer relationship for purposes of 12200.[17]

The Second Circuit examined both forum selection clauses in the two separate contractual agreements existing between FINRA Member Goldman Sachs and its undisputed Rule 12200 "customer," Golden Empire, and FINRA Member Citigroup Global Markets, Inc., and its undisputed Rule 12200 "customer," North Carolina Eastern.

Both forum selection clauses stated, "all actions and proceedings… shall be brought in the United States District Court…"[18]  After Golden Empire and North Carolina Eastern commenced separate actions before FINRA alleging their respective FINRA members had fraudulently induced them to issue the ARS, the FINRA members separately sought declaratory and injunctive relief against FINRA arbitration in federal district court.  Neither FINRA member disputed that for purposes of general contract interpretation, FINRA Rule 12200 creates a written agreement to arbitrate with their "customers" that is "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[19]

---

[17] See, *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 402 (3d Cir. 1987); *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.,* 660 F.3d 643, 652 (2d Cir. 2011); and, *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Insurance Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y 2010).

[18] *Golden Empire Schs. Fin. Auth.,* 764 F.3d 210, at 212 (2d Cir. 2014)

[19] *Id.,* at 214, *citing, 9 U.S.C. § 2*; *see, UBS Fin. Servs.*, 660 F.3d at 648-49.

Indeed this is a long settled principle of contract interpretation and the Supreme Court of the United States recently re-asserted the use of same, citing "[t]he final phrase of 9 U.S.C.S. § 2 of the Federal Arbitration Act," and holding:

"A written provision in… a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[20]

The contract interpretation principal relied upon by the Second Circuit in interpreting the enforceability and revocability of an agreement to arbitrate arising out of FINRA Rule 12200, is thus applicable to the same matter when raised before this Honorable Court in the state of Texas.

Challenges to the validity of **arbitration agreements** "upon such **grounds as exist at law** or**in equity for the revocation of any contract**" can be divided into two types. One type challenges specifically the validity of the **agreement to arbitrate**. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (U.S. 2006) – Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 764 F.3d 210, 2014 U.S. App. LEXIS 16155 (2d Cir. 2014): An "all inclusive" and "mandatory" superseding arbitration clause is grounds for revocation of the contractual agreement to arbitrate created by FINRA Rule 12200.

---

[20] *Id.,* at 1745.

An agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause "specifically precludes" arbitration. While there is no requirement that the later forum selection clause mention the prior arbitration, the forum-selection clause must be "all-inclusive" and "mandatory."[21] To be found "all-inclusive" and "mandatory," later forum-selection clauses "need only be sufficiently specific to impute to the contracting parties the reasonable expectation that they would litigate any disputes in federal court, thereby superseding the default obligation to arbitrate under FINRA Rule 12200."[22]

Second, the Court, which had previously addressed this issue in *Applied Energetics,* compared the forum-selection clause between the parties in that case, versus the forum selection clause before it in the Golden Empire Schools cases, thoroughly analyzed the use of the terms "**all actions and proceedings**." The Court specifically pointed out that although the terms used in Golden Empire Schools, "all actions and proceedings" was narrower than the terms "any dispute" used in *Applied Energetics*, it held that the "**forum selection clause at issue is plainly sufficient to supersede FINRA Rule 12200**."[23] The forum selection clause between Appellants and Appellee uses the terms "any claim or

---

[21] *Id.,* at 215, citing *Applied Energetics*, 645 F.3d at 525 (2d Cir. 2011).

[22] *Id.,* at 216, citing Applied Energetics, 645 F.3d at 525-526 (2d Cir. 2011).

[23] *Id.,* at 217.

controversy," which under the broader standard in *Applied Energetics* and the narrower standard in *Golden Empire Schools*, is plainly sufficient to supersede FINRA Rule 12200.

Finally, in 2002, the Supreme Court of the United States described a mandatory arbitration clause as one using the terms "**any dispute or claim**" followed by "**shall be settled by binding arbitration**."[24] Thus by the Second Circuit's standard and the standard outlined by the United States Supreme Court, the arbitration clause between the parties at bar qualifies as a 'mandatory' arbitration clause, and same reads, as follows:

"K. Arbitration of Disputes. **Any claim or controversy** arising out of or relating to this Agreement, or the breach thereof, **shall be settled by binding arbitration** in accordance with the Commercial Arbitration Rules of the American Arbitration Association."[25]

Thus, Appellants' conclusion, after their gross mischaracterization of both existing precedent and the record in this cause, that it is an "undisputable fact" that "[a]s a matter of federal law and regulation, a FINRA customer's Rule 12200 right

---

[24] *EEOC v. Waffle House, Inc.,* 534 U.S. 279, at 282-3 (U.S. 2002).

[25] See Appellants Brief, Tab 2, the Agreement, Paragraph 2

22

to arbitrate before FINRA cannot be waived or abrogated by contract," is patently false.[26]

**E. Status as a "customer" for purposes of FINRA Rule 12200 has never been determined by merely examining "the face of the Agreement.".**

Appellants' unsupported and conclusory statement that, "the only issue to be determined is whether, on the face of the Agreement, Nemaha can be deemed a "customer" of Esposito for FINRA purposes," is incorrect.[27] Appellants have not cited a single provision or precedent (nor has Appellee found one for that matter) wherein a court determined whether a party is a FINRA member's "customer" for purposes of Rule 12200 by examining "the face of the agreement," as Appellant has insinuated is the only proper path here.

Rather, as Appellee presents in detail to the Court below, federal appellate courts examine the fact pattern in each case, with particular attention to the nature of the relationship between the parties, which always includes either 1) an account, or 2) a purchased good or service, and a sustained financial loss to the non-FINRA member (see subsection X, page X of Appellee's brief below).

---

[26] See Appellant Brief, page 7, no. 4 (see also Morgan Keegan)

[27] See Appellant Brief, page 12

**F.** **Federal Appellate Courts Have Rejected Appellants' Contention that there is a presumption favoring FINRA Arbitration.**

Appellants claim that interpretation of FINRA's arbitration rules is similar to contract interpretation and that in accordance with long-standing federal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration (Appellee can only assume Appellants mean in favor of FINRA Arbitration as opposed to arbitration under the parties' written agreement).[28]

First, Appellee notes the multiple cases rejecting this contention.[29] In the case cited by Appellants to rely on the presumption in favor of resolving the present dispute in favor of FINRA arbitration, that very court explicitly rejected that very contention. In *Abbar*, the Court found that where "the parties are disputing the existence of an obligation to arbitrate, not the scope of the arbitration clause, the general presumption in favor of arbitration does not apply."[30] In Abbar,

---

[28] See Appellant Brief, Page 11, *citing, Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011), *also citing, Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003).

[29] See *Wachovia*, 661 F.3d at 170-71; *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 39 (2d Cir. 2010) cf. *Bensadoun*, 316 F.3d at 176 (classifying *John Hancock's* suggestion that presumption in favor of arbitration applies as "dicta").

[30] *Citigroup Global Mkts. v. Abbar*, 761 F.3d 268, 273 (2d Cir. N.Y. 2014) (affirmed district court decision that where Abbar held investments with foreign entity, Abbar was not a "customer" of N.Y. based FINRA member and could not compel FINRA arbitration), *citing Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (("While doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.")

at issue was whether Abbar was a Rule 12200 "customer" having the right to request FINRA arbitration, and thus the ultimate issue of "the existence of an agreement to arbitrate, not the scope of the arbitration clause."[31] Here, and at the trial court level, Appellee has disputed Appellants' claims that they are a "customer" for purposes of FINRA Rule 12200. Appellee thus disputes whether an obligation to arbitrate ever arose out of FINRA Rule 12200.

As per the *Abbar* and other decisions cited herein by Appellee, Appellants' suggestion that the presumption in favor of arbitration results in a presumption in favor of arbitration before FINRA is completely misapplied. Appellants have failed to identify a single case where the existence of a "customer," and thus whether an agreement to arbitrate before FINRA existed at all, was in dispute, wherein the Court cited the presumption in favor of arbitration as grounds for requiring the parties to arbitrate before FINRA. In the present matter, there is no presumption in favor of arbitration before FINRA, the presumption in favor of arbitration does not apply to the questions of arbitrability that was presented to the trial court and is before this Honorable Court now.

Finally, it would appear Appellants' argument suggests this Court should only apply principles of contract interpretation to FINRA's arbitration rules but not to the actual contractual agreement expressly entered into between the parties.

---

[31] Id.

Given the rulings in *Abbar* and *Applied Energetics*, it would appear that not only is that incorrect, but in fact the Second District has expressly stated that the presumption in favor of arbitration applies to the scope of the arbitration clause in the Agreement between the parties.[32]

## G. General Rules of Contract Interpretation Favor Arbitration Before the American Arbitration Association (AAA)..

The Texas Civil Practice & Remedies Code provides, "[a] written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that: . . . arises between the parties after the date of the agreement."[33]  Similarly, the Federal Arbitration Act provides that a written arbitration provision is valid, irrevocable, and enforceable.[34]

Appellee would note that Supreme Court precedent holds that the question of arbitrability is for a court to determine.  In *Howsam v. Dean Witter Reynolds, Inc.*, the Supreme Court's holding was unambiguous: "[t]he question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[35]

---

[32] Id. As to Abbar and Energetics, see also Agreement

[33] TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(a).

[34] 9 U.S.C. § 2 (2006).

[35] *Id*. at 83 (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If, on the other hand, the parties did not agree to submit the arbitrability

Proceedings to compel arbitration must be conducted in accordance with the procedure outlined in § 171.021 of the Texas Civil Practice and Remedies Code.[36] Under this provision, a court must order arbitration on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.[37] The arbitration agreement provides the AAA with authority to administer the arbitration. Importantly, once a court determines that a matter is subject to arbitration, it has no discretion to modify the parties' agreement.[38] Indeed, it is an abuse of discretion to order parties to an arbitration not administered by the AAA when they have agreed to arbitrate under the AAA rules.[39]

Appellee would point to a 2008 ruling by this Honorable Court, wherein the Court of Appeals, Fifth District, Dallas, stated "[a]rbitration agreements are

question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").

[36] Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a)(1)-(2).

[37] *Id.*

[38] *See In re Nat'l Health Ins. Co.,* 109 S.W.3d 552, 556 (2002) (holding that a court cannot change an arbitration agreement because it or one of the parties comes to dislike its provisions or thinks that something else is needed in it).

[39] *See In re Crosstex CCNG Processing Ltd,* 2008 Tex. App. LEXIS 8391, *6 (Tex. App.—Dallas 2008) (mem. op.) ("[the] trial court failed to correctly analyze and apply the law when it altered the agreement [calling for arbitration in accordance with the Patent Arbitration Rules of the AAA] by ordering the parties to submit to an arbitration not administered by the AAA. The trial court's failure to analyze and apply the law constitutes an abuse of discretion").

interpreted by applying contract principles[,]" and "a court cannot change an arbitration agreement because it or one of the parties comes to dislike the provisions of the arbitration agreement or thinks that something else is needed."[40] The Court further stated that "the trial court failed to correctly analyze and apply the law when it altered the agreement by ordering the parties to submit to an arbitration not administered by the AAA[,]" and that "[t]he trial court's failure to analyze and apply the law constitutes an abuse of discretion."[41]

Thus, the 44th District Court of Dallas County would have in fact abused its discretion had that court changed the parties' expressly entered into pre-dispute arbitration agreement because Appellants came to dislike the provision or thought something else was needed.

## H. Precedent does not exist requiring construing facts in favor of finding a party is a "customer" for purposes of FINRA Rule 12200

Citing a single case, *LA Citizens*,[42] Appellants contend that "courts" (as in plural) have advised that any question as to whether a party is a "customer" for purposes of FINRA Rule 12200 should be construed in favor of finding that the party is a "customer."[43] The *LA Citizens* decision came out of the United States

---

[40] *Id.*

[41] *Id.*

[42] *JP Morgan Sec. v. La. Citizens Prop. Ins. Corp.*, 712 F.Supp. 2d 70 (S.D.N.Y. 2010), see Appellant Brief, page 12

[43] Id., at 77

District Court for the Southern District of New York in 2010. However, later, in 2011, the Second Circuit Court of Appeals held in *VCG Special Opportunities* that "terms such as 'customer' should be construed in a manner consistent with the 'reasonable expectations' of FINRA members," making no mention of a presumption in favor of finding a party is a "customer" for purposes of FINRA Rule 12200.[44]

## I. APPELLANTS DO NOT PRESENT A VIABLE ARGUMENT THAT APPELLANTS ARE CUSTOMERS FOR PURPOSES OF FINRA RULE 12200 AND APPLICABLE CASE PRECEDENTS

Federal circuit courts across the nation, and even the United States District Court for the Southern District of Texas, have rejected the argument that everyone is a "customer" except a broker or a dealer.[45] The term "customer" in FINRA Rule 12200 refers to "an entity that is not a broker or dealer, who **purchases** commodities or services from a FINRA member in the course of the member's business activities, namely, the activities of investment banking and the securities

---

[44] *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F. 3d 164, at 171 (2d Cir. 2011), *citing, Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993).

[45] *Credit Suisse Sec. (USA) LLC v. Sims,* 2013 U.S. Dist. LEXIS 143712, *4 (S.D. Tex. Oct. 4, 2013) (citing *Berthel Fisher & Co. Fin. Servs., Inc.,* 695 F.3d at 752); *Morgan Keegan & Co.*, 706 F.3d at 565-66.

business."[46] The plain meaning of the word "purchase," is to "to buy (property, goods, etc.)" or "to get (something) by paying money for it."[47]

All relevant case law, found by Appellee to date, wherein the issue before a district court of competent jurisdiction is whether a party wishing to compel a FINRA Member to FINRA Arbitration qualifies as a "customer" for purposes of Rule 12200, the party moving to compel arbitration has, at a minimum, held an account with or *purchased* commodities or services from a FINRA member. Appellants have never held an account with or purchased commodities or services from FINRA Member Esposito (Appellee).[48]

Nevertheless, Appellants make several unsupported, uncited, and fairly indecipherable claims as to why Appellants should be found to be "customers" for purposes of FINRA Rule 12200, Appellee shall address these in turn.

1. *The unexplained "disjunctive" between account holders and purchases of goods and services*

Citing *Abbar*, Appellants allege that because parties are found to be a "customer" for purposes of FINRA Rule 12200, either because the party is an account holder, or because the party has purchased goods and services, same creates an "instructive" "disjunctive" that leaves "no doubt" that Appellants were

---

[46] *Morgan Keegan & Co.*, 706 F.3d at 565-66, *see also, UBS Fin. Services, Inc. v. Carilion Clinic*, 706 F.3d 319, 328-29 (4th Cir. 2013).

[47] *Morgan Keegan & Co.*, 706 F.3d at 565-66

[48] CITE ALL CASES USED IN TRIAL COURT ARGUMENTS

Rule 12200 "customers."[49] Appellants' proffered rationale is seemingly that Appellants must have been purchasing a service because they did not have an investment or trading account there, and evidently, a party interacting with a FINRA member at all, must be doing one or the other.[50]

First, and plainly, Appellee finds this reasoning difficult to follow as written. Second, as Appellants have not cited a single case wherein the supposed disjunctive between the only two bases for identifying a party as a Rule 12200 "customer" was in fact the reason for finding the party was a Rule 12200 "customer," Appellee will not address this contention further.

2. ***Appellants state, but do not support, the contention that the contingent nature of the parties payment agreement is irrelevant for purposes of determining whether Appellants are Rule 12200 "customers."***

Appellants state that the "contingent nature of payment does not negate the fact that Esposito obtained a 5% interest in exchange for the provision of services."[51] However, Appellants do not cite a single case wherein, a party who had a contingent payment agreement, or wherein a FINRA member's obtained interest in exchange for provision of services, was the basis for finding that the

---

[49] See Appellants' Brief, page 12

[50] See Appellants' Brief, page 12

[51] See Appellants' Brief, page 12

31

party was a Rule 12200 "customer." Accordingly, Appellee will not address this matter further

     *3.*     ***There is no case law, much less a "superabundance of case law" holding financial agreements similar to that between Appellants and Appellee are sufficient to create a customer-member relationship for FINR Arbitration purposes***

Appellants have cited federal appellate court decisions holding that a party who purchased goods or services from a FINRA member, in a context beyond a classic investor-broker relationship, were "customers" for purposes of FINRA Rule 12200. Appellee does not dispute the existence of these cases. Further, Appellee does not dispute that in general, where a dispute arose over whether a party was a "customer" for purposes of FINRA 12200, courts have found parties to be customers and forced FINRA members to FINRA Arbitration.

However, Appellee would point out, that Appellants non-cited general summary that "similar financial services agreements as involved here – be it for raising money, identifying transactions such as mergers and acquisitions, or other financial service[sic] that are clearly within the 'business activities' of a FINRA member – are sufficient to create a customer-member relationship for FINRA Arbitration purposes,"[52] is a blatantly unsupported misstatement of the law, and yet another attempt to mislead this Honorable Court.

---

[52] See Appellant Brief, page 14

**4.** ***Cases cited by Appellants involve Financial Agreements for the issuance and underwriting of Auction Rate Securities (ARS)***

The "superabundance" of case law cited includes three cases wherein the FINRA Member acted as an issuer of auction rate securities ("ARS").[53] Additionally, in each case, the party ultimately found to be a "customer," alleged an actual financial loss as a result of the FINRA Member's business activities, and thus was the party bringing the action, not the FINRA member. In the present matter, the FINRA Member (Appellee Esposito) did not underwrite ARS for the other party (Appellants Nemaha) and the other party has not alleged, nor is there a record of, a financial loss at the hands of FINRA member Esposito. Finally, FINRA Member Esposito initially brought this action against Nemaha, not vice versa. The facts at bar are wholly distinguishable from the facts presented in the three ARS cases cited by Appellants. Herein, Appellee addresses the three ARS cases by Appellants in support of this similar financial service agreements contention.

**a.** ***Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987).**

First, Appellants cite *Patten Securities*, a case wherein a corporation contracted a FINRA member to serve as underwriter for the sale of the

---

[53] See Appellant Brief, page 14, citing

corporation's shares and warrants.[54]   When the proposed deal was not consummated, the non-FINRA member corporation demanded arbitration before FINRA, for damages it sustained as a result of the FINRA Member's refusal to purchase the securities and damages arising from same.[55]   The Third Circuit, held the corporation was the FINRA member's Rule 12200 "customer," relying on an interpretive statement from the NASD's National Arbitration Committee that stated, "an issuer of securities should be considered a public customer of a member firm where a dispute arises over a proposed underwriting."[56]   In the present matter, Appellee Esposito was never contracted to serve as underwriter for Appellants' shares and warrants and Appellants only brought an action before FINRA (seeking declatory judgment that it was either not liable to Esposito under the Agreement, or that the Agreement was fraudulently induced) until after Appellee FINRA Member brought an action for damages before the A.A.A under the arbitration clause in the parties' agreement.[57]   Appellants do not dispute the validity of these facts.

> **b.**      ***UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 652 (2d Cir. 2011) and *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Insurance Corp*., 712 F. Supp. 2d 70 (S.D.N.Y 2010).**

---

[54] *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc*., 819 F.2d 400, 402 (3d Cir. 1987).

[55] *Id.,* at 402-403.

[56] *Id.* At 406.

[57] See Appellant Brief Tab B, the Agreement, Paragraph K, see also Appellants' Brief, page 5, citing CR 245

Next, Appellants cite *West Virginia University Hospitals*[58] and *Louisiana Citizens*,[59] two cases which present largely identical facts. In both cases, the FINRA Member had served as a broker-dealer to the other party at some point, and the relevant dispute arose out of the issuance of ARS.

In *Louisiana Citizens*, the FINRA member served both as underwriter and remarketer of the bonds, in said capacity, Citizens contended they suffered economic loss as a result of J.P. Morgan's (the FINRA member) manipulation of the relevant market.[60] Citizens then sought to arbitrate the dispute before FINRA. The Southern District of New York cited the Third District's decision in *Patten,* noting, "although the relationship [in *Patten*] was not a broker/investor relationship, [the issuer/underwriter relationship] still related directly to the issuance of securities, *rather than* banking advice."[61] The court concluded that issuers are Rule 12200 "customers" of underwriters and could demand arbitration before FINRA of their disputes.[62] Appellants were never issuers for Appellee

---

[58] *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.,* 660 F.3d 643, 652 (2d Cir. 2011)

[59] *J.P. Morgan Securities Inc. v. Louisiana Citizens Property Insurance Corp.*, 712 F. Supp. 2d 70 (S.D.N.Y 2010).

[60] *Id.,* at 74-79

[61] *Id.*, (alteration in the original, *emphasis added*) (quoting *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.* 264 F.3d 770, 773 n.3 (8th Cir. 2001)).

[62] *Id.,* at 74-79

Esposito, and Appellee Esposito never provided underwriting services for Appellants.[63]

Appellants do not dispute the validity of these facts. The circumstances surrounding the parties' relationship in LA Citizens is wholly distinguishable than that between Appellants and Appellee here.

In *West Virginia University Hospitals*, the Second Circuit limited its finding that WVUH was a "customer" under FINRA 12200 to the fact that WVUH had paid for UBS to perform broker-dealer services.[64]  It is not contested, and indeed Appellants have conceded the fact that Appellee Esposito was not performing broker-dealer services for Appellants, nor had Appellants paid any monies to Appellee Esposito. ** CITE RECORD

    **i.**     **Other cases cited by Appellants present factual circumstances wholly distinguishable from the case at bar.**

    **a.**     ***Morgan Keegan & Co., Inc. v. Garrett*, 816 F.Supp.2d 439 (S.D. Tex. 2011).**

Appellants cite *Garret* as an alleged member of the "superabundance" of case law establishing that the Agreement between the parties at bar establishes that Appellants are Rule 12200 "customers."[65]  Appellants do not include an in-text

---

[63] See Appellants' Brief, Tab B, the Agreement

[64] *See*, 660 F.3d 643 at 648 (2d Cir. 2011).

[65] See Appellant Brief, page 14

citation to the case, but merely list the case in a footnote with no parenthetical explanation as to its analysis or holding.[66] Appellee has examined this approximately two page case in detail and can find no reference to a financial services agreement. However the court does specifically point out that, "[c]laimants and Morgan Keegan agreed to arbitrate before the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc. – both follow Financial Industry Regulatory Authority rules."[67] As to those claimants, they had an agreement to arbitrate using FINRA arbitration rules, and therefore, as per the text of FINRA Rule 12200, their status as a Rule 12200 "customer" was irrelevant, their right to a FINRA arbitration arose out of their written agreement to do so.[68]

Two Claimants did not have a written agreement to arbitrate with Morgan Keegan, and when the Court found that these two claimants "bought shares in the fund from third-party brokers on the secondary market" and that these two claimants "never gave money to Morgan Keegan," the Court found that these two

---

[66] Id., footnote citation no. 34.

[67] *Morgan Keegan & Co., Inc. v. Garrett*, 816 F.Supp.2d 439, 441 (S.D. Tex. 2011).

[68] FINRA Rule 12200 (Parties must arbitrate a dispute under the Code if arbitration under the Code **is either required by a written agreement, or requested by the customer**…)

Claimants were not Rule 12200 "customers" and "could not compel Morgan Keegan to arbitrate."[69]

Appellants cited a case that fails on its face to support Appellants' generally cited summary regarding alleged financial service agreements underlying other cases. Further, Appellants actually cited a case which furthers Appellee's argument that absent a written agreement to arbitrate with FINRA, one must be a "customer," to demand arbitration before FINRA, and one is a Rule 12200 "customer" if they hold an account and / or have "*purchased* goods or services from the FINRA member relating to banking and securities activities."

### b. *Zarecor v. Morgan Keegan & Co., Inc.*, No. 4:10-cv-01643 (SWW), 2011 WL 5592861 (E.D. Ark. July 29, 2011);

Appellants cite *Zarecor* as an alleged member of the "superabundance" of case law establishing that the nature of the Agreement between the parties at bar establishes that Appellants are Rule 12200 "customers."[70] Appellants do not include an in-text citation to the case, but merely list the case in a footnote with no parenthetical explanation as to its analysis or holding.[71]

Appellee has examined this case in detail and does not find a single reference to an underlying financial services agreement. Further, Appellee does

---

[69] . *Garrett*, 816 F.Supp.2d 439, at 441 (S.D. Tex. 2011)

[70] See Appellant Brief, page 14

[71] Id., footnote citation no. 34.

not find reference to any of the following terms; FINRA, customer, or arbitration. It appears the suit in *Zarecor*, brought before federal district court in Tennessee, involves a decision from a "Judicial Panel on Multidistrict Litigation" and is wholly unrelated, incomparable, and irrelevant to matters raised to this Honorable Court by virtue of Appellants' appeal. Accordingly, Appellee will not address this case further.

## A. APPELLANTS CITE IRRELEVANT FINRA RULES AND IRRELEVANT FACTS THAT FAIL TO SAVE APPELLANTS ARGUMENT THAT THEY ARE "CUSTOMERS" FOR PURPOSES OF FINRA RULE 12200

### i. FINRA Rule 4530 – Not a Provision of the FINRA Code of Arbitration Procedure for Customer Disputes (FINRA Rule 12000, et al).

Appellants have cited FINA Rule 4530,[72] which is not a provision of the FINRA Code of Arbitration Procedure for Customer Disputes (FINRA Rule 12000, et al). Specifically, Rule 4530 falls under FINRA Rule 4000, et al., regarding "Financial and Operational Rules" and relates to reporting requirements and customer complaints involving investments.[73] First, the predicate to Rule 12100's definitions states, unless otherwise defined in the Code, terms used in the Rule and interpretive material, if defined in the FINRA By-Laws, shall have the meaning as defined in the FINRA By-Laws. FINRA Rule 4530 is not a part of the

---

[72] See Appellants' Brief, page 19

[73] See FINRA Rule 4000, et al.

FINRA By-Laws. Second, the case at bar does not involve a reporting requirement, nor a complaint involving an investment. The term "customer" is defined in the Code.[74] FINRA Rule 4530 is wholly inapplicable here and should be disregarded by this Honorable Court.

ii. **Appellant again misstates the contents of the Second Circuit's decision in *Abbar*, which held that a party who received services from a FINRA member, but that had not paid any fees to said FINRA member, had not purchased a good or service, and was thus not a FINRA Rule 12200 "customer."**

Appellants have cited text from Abbar as follows:

"**By agreeing to accept "[sic]a fee for its services"** or by selling securities to an entity, a FINRA member understands that it may be compelled to arbitrate if a dispute arises with that entity. **This may not be a "comprehensive definition of the term," but it captures virtually all customer relationships.[sic]**

Appellants suggest same establishes that a mere agreement to accept services, which the court recognizes as "captur[ing] virtually all customer relationships," makes a party who enters an agreement with a FINRA member a "customer" for purposes of FINRA Rule 12200. Appellants have conveniently left out the later text from the same case, which unequivocally establishes that the party in that case that did not pay the FINRA member actual fees was found NOT to be a "customer" for purposes of FINRA 12200.

---

[74] FINRA Rule 12100(i).

In *Abbar*, the Second Circuit's analysis is as follows:

"Citi NY employees certainly provided services to Abbar: they helped structure and manage the option transactions. **However, Abbar did not purchase those services from Citi NY.** His investment agreements were with Citi UK, and **the fee for all services rendered by Citigroup personnel and offices was paid to Citi UK.** While Abbar was certainly a "customer" of Citi UK, that relationship does not allow Abbar to compel arbitration against its corporate affiliate [Citi NY]."[75]

"In most cases, this definition of "customer" can be readily applied to undisputed facts. That is so in this case: Abbar never held an account with the FINRA member [Citi NY] and (notwithstanding his argument to the contrary) never purchased any goods or services from it."[76]

"The only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and courts need not wonder whether myriad facts will 'coalesce into a functional concept of the customer relationship.'"[77]

Similar to the situation between the parties in the present matter, the FINRA member in *Abbar* agreed to provide services, however, the FINRA was never paid

[75] *Abbar*, 761 F.3d at 275

[76] *Id.,* at 276.

[77] *Id.,* at 276, citing, *CGMI v. Abbar*, 943 F. Supp. 2d at 407.

41

any fees. The Second Circuit held that Abbar was not a "customer" for purposes of Rule 12200. For the same reasons, Appellants here are not "customers" for purposes of Rule 12200.

### iii. Appellants attempt to analogize legal contingency fee agreement.[78]

Appellants state that when a person employs an attorney on a contingent fee basis the person becomes a client (for assumingly the purpose of having standing to bring an action against the attorney, but Appellants do not elaborate). Appellants then conclude that said analogy establishes that the Agreement between the parties here makes Appellants a client of Esposito. Appellees would merely point out that shall the issue before this Honorable Court come down to whether or not Appellants are "customers" of Appellee for purposes of FINRA Rule 12200, the only scenarios that should be considered are those involving FINRA members, and the rules and legal precedent surrounding same. Given Appellants have not provided any legal citations as to this analogous suggestion, Appellee will not address same further.

### iv. Appellants raise direct privity by contract, note that under Appellee's scenario, FINRA member could not bring action before FINRA.

Appellants find it worth noting that direct privity of contract upholds Appellants as a customer (Appellants have yet to establish Appellants are

---

[78] See Appellants' Brief, page 20

"customers" for purposes of FINRA Rule 12200) despite fraudulent inducement or non-performance under a contract. Appellants then suggest that if direct privity of contract does not accomplish same, "then it is difficult to imagine any breach of contract or fraud claim that could be brought before FINRA because a member could never bring a FINRA claim against a client for failure to pay."[79]

Appellees would politely point out, that a FINRA member can never bring a FINRA claim against a customer, client, or otherwise, ever, because Rule 12200 only allows a Rule 12200 "customer" to request FINRA arbitration under Rule 12200. "It is important to note that only the customer can compel arbitration under 12200, the option is unavailable to the member firm."[80]

In consideration of the following: 1) privity of contract was not discussed before the trial court, 2) privity of contract has no effect on a FINRA member's ability to bring a claim before FINRA because the member does not have, and has never had that option, and 3) Appellants have utterly failed to explain the relevancy of these statements to the matters pending before this Honorable Court, Appellee will not address this further.

---

[79] See Appellants' Brief, page 20

[80] *See* Catherine Moore, The Effect of the Dodd-Frank Act on Arbitration Agreements: A Proposal for Consumer Choice, 12 PEPP. DISP. RESOL. L. J. 503, 511 (2012), note 5, at 508-509.

**v.** **FINRA Rule 2268 Applies to Agreements with Account Holders (ONLY) not the Relevant Dispute OR the Relevant Pre-Dispute Arbitration Agreement**

Appellants raise FINRA Rule 2268, which is not part of the FINRA Code of Arbitration for Resolving Customer Disputes (Rule 12200, et al.).[81] Appellee would note that the title of FINRA Rule 2268 is as follows: "Requirements When Using Predispute Arbitration Agreements for **Customer Accounts**." Appellants have admitted, and do not dispute, that they have never held a customer account, or any account with Appellee. Appellee will nevertheless address the other glaring problems with attempting to raise this rule in the manner in which Appellants have raised same.

Appellants begin by citing subsection (d)(1), which they apparently have not realized is part of the form language that is to be included in any pre-dispute arbitration agreement with a holder of an account. Rule 2268 begins with subsection (a), which says "[a]ny predispute arbitration clause shall be highlighted and shall be immediately preceded by the following language in outline form." Rule 2268, regarding customer accounts, then goes on to provide seven hundred and eighty three (783) words of text, including the eleven (11) words which Appellants have completely taken out of context and cited in their Brief, to wit "Rule 2268(d)(1) expressly prohibits member firms from placing 'any condition'

---

[81] See FINRA Rule 2268 and FINRA Rule 12000, et al.

44

in a pre-dispute arbitration agreement that 'limits or contradicts the rules of any self-regulatory organization.'"[82]

In addition, Appellant claims that Rule 2228 requires that *any* pre-dispute arbitration clause be preceded by the highlighted text found therein. In Appellee's pleading to the trial court, to wit: Plaintiff's Brief in Support of Plaintiff's Reply to Defendant's Amended Response to Plaintiff's Motion to Compel Arbitration," Appellee specifically eliminated any shred of applicability this Rule could have to the pre-dispute arbitration agreement between the parties at bar.[83]

### i. The definition of "Customer Account," is provided by the SEC which regulates FINRA Rules. Nemaha Appellants do not hold a "Customer Account" with FINRA Member Esposito.

"Customer Account" is not given a definition in the FINRA Rules. As Plaintiff previously stated, "**customer account**" is defined by the SEC as accounts *held by* retail and institutional customers.[84] This SEC definition can be found on FINRA's official website at:

http://www.finra.org/Industry/Compliance/MarketTransparency/INSITE/FAQ/P005933.

FINRA has regulatory power, delegated from Congress through the SEC in the Securities Exchange Act of 1934 ("Exchange Act"), over broker-dealer firms

---

[82] See Appellants' Brief page 22, citing FINRA Rule 2268(d)(1).

[83] Cite to the CR and Pleading

[84] SEC Rule, 16 C.F.R. § 240.15C3-3(a)(1) (emphasis added).

registered pursuant to <u>Section 15 of the Exchange Act</u> and their registered associated persons.[85] The Exchange Act gives FINRA the power to propose rules for the conduct and governance of its regulatory functions, and the Exchange Act also regulates those rules.[86]

As per the SEC definition of "customer account," cited on FINRA's official web site, Nemaha Appellants do not currently, nor have they ever, related to the contractual Agreement between the parties or otherwise, *held* any kind of an account, be it as a retail or as an institutional customer.

> ii. **Appellee Esposito maintains a form for opening customer accounts which complies with Rule 2268, this form was never provided to Nemaha Appellants because they never opened an "Customer Account."**

FINRA Rule 2268, went into effect on December 1, 2011. Since that time, Esposito has maintained a document, which Esposito has used in the regular course of business, entitled "New Account Form (instructions)." At the trial court level, William D. Martin, Chief Compliance Officer of Esposito Securities, LLC (Appellee) executed a Business Records Affidavit regarding this document, verifying that Esposito is not only aware of Rule 2268, but fully complies with the Rule when necessary.[87]

---

[85] *Charles Schwab & Co.*, 861 F. Supp. 2d at 1065.

[86] *Charles Schwab & Co.*, 861 F. Supp. 2d at 1065.

[87] Cite to CR and pleading

CONCLUSION

For the foregoing reasons, Appellee respectfully request the court overrule Appellants' issue in its entirety and affirm the trial court's judgment. Appellee further requests all other relief to which it is entitled.[88]

Respectfully submitted,

**Mizgala Law PLLC**

/s/ David J. Mizgala
**David Jefrie Mizgala**
State Bar No. 24031594
david@mizgalalaw.com
Rosewood Court
2101 Cedar Springs Road, Suite 1050
Dallas, Texas 75201
(214) 238-4800 (direct dial)
(214) 238-4801 (direct fax)
—and—

**MODJARRAD | ABUSAAD | SAID LAW FIRM**

**RHIANNON KELSO**
Texas Bar No. 24080636
rkelso@modjarrad.com
**SEAN S. MODJARRAD**
Texas Bar No. 24027398
smodjarrad@modjarrad.com

212 W. Spring Valley Road
Richardson, Texas 75081
Tel. (972) 789-1664
Fax. (972) 789-1665

---

[88] Cite to CR and pleading

**Counsel for Appellee-Plaintiff**

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, I certify that a true and correct copy of this ***APPELLEE's BRIEF ON THE MERITS*** was served upon the following counsel of record on January 16, 2015, by the undersigned counsel's e-filing provider and the Court's e-filing system:

| | |
|---|---|
| **Mazin Sbaiti** | **Richard A. Lewins** |
| State Bar No. 24058096 | State Bar No. 0079416 |
| **Sean R. Cox** | **LEWINS LAW** |
| State Bar No. 24031980 | 7920 Belt Line Road, Ste. 650 |
| **STECKLER, LLP** | Dallas, Texas 75248 |
| 12720 Hillcrest Road, Ste. 1045 | Telephone: (972) 934-1313 |
| Dallas, TX 75230 | Facsimile: (972) 231-3983 |
| Telephone: (972) 387-4040 | rlewins@lewinslaw.com |
| Fax: (972) 387-4041 | |
| mazin@stecklerlaw.com | |
| sean@stecklerlaw.com | |

/s/ David J. Mizgala
David Jefrie Mizgala