**Reversed and Rendered and Writ Conditionally Granted; Opinion Filed September 18, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01223-CV

## MICHAEL MORFORD, INDIVIDUALLY, D/B/A NEMAHA WATER SERVICES, GEFFREY ARNOLD MCFALLS, INDIVIDUALLY D/B/A NEMAHA WATER SERVICES, NEMAHA WATER SERVICES, LP, NEMAHA WATER SERVICES GP, LLC, NEMAHA WATER SERVICES OK-1702, LLC, AND NEMAHA SERVICES HOLDING COMPANY, LLC, Appellants
### V.
### ESPOSITO SECURITIES, LLC, Appellee

On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-05795

### MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Whitehill
Opinion by Justice Stoddart

This is an appeal from an order denying Nemaha's[1] motion to compel arbitration before

the Financial Industry National Regulatory Authority (FINRA) and granting Esposito Securities,

LLC's motion to compel arbitration before the American Arbitration Association (AAA). In a

single issue, Nemaha argues the trial court erred by concluding Nemaha was not a customer

---

[1] Appellants are Michael Morford, Individually, D/B/A Nemaha Water Services, Geffrey Arnold Mcfalls, Individually D/B/A Nemaha Water Services, Nemaha Water Services, LP, Nemaha Water Services GP, LLC, Nemaha Water Services Ok-1702, LLC, and Nemaha Services Holding Company, LLC. We refer to appellants collectively as Nemaha.

under FINRA rules and by denying Nemaha's motion to compel arbitration before FINRA.

We conclude we have appellate jurisdiction over that portion of the order denying Nemaha's motion to compel arbitration, but not over that portion granting Esposito's motion to compel arbitration. Nemaha requests that we treat this appeal as a petition for writ of mandamus if necessary. We grant Nemaha's request and treat the appeal as a petition for writ of mandamus regarding the order granting Esposito's motion to compel arbitration.[2]

We conclude Nemaha is a customer of Esposito, a FINRA member, and entitled to request FINRA arbitration under the rules adopted by FINRA and approved by the Securities and Exchange Commission (SEC) under its Congressionally delegated rulemaking authority. Accordingly, the trial court erred by denying Nemaha's motion to compel arbitration before FINRA and abused its discretion by granting Esposito's motion. We reverse the trial court's order denying Nemaha's motion, render judgment granting Nemaha's motion to compel arbitration, and order all disputes between the parties proceed to arbitration before FINRA pursuant to FINRA rules. We conditionally grant the petition for writ of mandamus as to the portion of the order granting Esposito's motion to compel arbitration and direct the trial court to vacate that portion of the order.

## BACKGROUND

Esposito, a Dallas based firm, is a licensed securities broker and member of FINRA. As a member of FINRA, Esposito agreed to arbitrate disputes with it customers under FINRA rules.[3]

---

[2] Pursuant to rule 7.2(b), we abated this proceeding to allow the successor judge of the trial court to reconsider the order. The judge of the trial court affirmed the order and we reinstated this proceeding.

[3] *See UBS Fin. Services, Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011) (by joining FINRA, members agree to comply with FINRA rules including FINRA Code of Arbitration); FINRA Code Rule 12200, 2015 WL 464978 ("Parties must arbitrate a dispute under the [FINRA] Code if: Arbitration under the [FINRA] Code is either: (1) Required by a written agreement, or (2) Requested by the customer;" the dispute is between a customer and a member; and the dispute arises in connection with the business activities of the member).

Customers of FINRA members are third party beneficiaries of the agreement to arbitrate[4] and may enforce that agreement pursuant to rules promulgated by FINRA. This case arises out of a letter agreement (Agreement) between Esposito and Nemaha,[5] based in Oklahoma, whereby Esposito agreed generally to assist Nemaha in finding investors or a merger partner in return for a fee of five percent of the total consideration received by Nemaha in a qualifying transaction. The Agreement contains an arbitration provision requiring resolution of all disputes arising out of or relating to the Agreement by binding arbitration according to the rules of the AAA.

Esposito alleged in its statement of claim before the AAA and its petition in this case that it performed a number of services for Nemaha that were accepted by Nemaha and that Nemaha, in breach of the terms of the Agreement, negotiated and closed two transactions without coordinating or communicating with Esposito. When Esposito learned of these transactions, it demanded a fee of five percent of the total consideration received by Nemaha, approximately $410,000. Nemaha refused the demand.

Esposito filed a claim for arbitration with the AAA, but Nemaha refused to participate in the AAA arbitration. Esposito then filed this lawsuit seeking to recover damages for breach of contract or in the alternative, quantum meruit, and filed a motion to compel arbitration before the AAA. In response, Nemaha filed a counterclaim for a declaratory judgment that the transactions did not fall within the description of transactions requiring the payment of a fee under the terms

---

[4] *See id.* ("A customer under the exchange's rules is entitled to invoke the arbitration provision 'as an intended third-party beneficiary' in a dispute with a member.") (quoting *Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863–64 (2d Cir. 1994) (customers are intended beneficiaries of member's agreement to arbitrate pursuant to NASD, predecessor to FINRA, rules)).

[5] The record is unclear whether Nemaha is a separate legal entity or merely an assumed name of the individuals and partnerships named as parties in Esposito's original petition. The Agreement was signed on behalf of Nemaha Water Services by Michael Morford as partner and president. Esposito alleged in its petition and AAA supplemental statement of claim that it entered into the agreement with all of the appellants doing business as Nemaha Water Services. Esposito sought to compel all of the appellants to arbitration as parties bound by the Agreement. Accordingly, we will consider the appellants collectively as a single business and parties to the Agreement as Esposito has done.

of the Agreement. Nemaha also filed a motion to compel arbitration before FINRA and initiated an arbitration proceeding in that forum.

After three hearings on the matter, the trial court signed an order determining that Nemaha was not a customer of Esposito because appellants "have apparently taken the position in their Statement of Claim to FINRA that [Esposito] is not entitled to a transaction fee because the [appellants] have yet to purchase a good or service." The order granted Esposito's motion to compel arbitration and required the parties to arbitrate all claims before the AAA, and impliedly denied Nemaha's cross-motion to compel arbitration before FINRA.

## JURISDICTION

Two jurisdictional issues are presented in this appeal. First is the late filing of the notice of appeal under TEX. R. APP. P. 26(b). Second is our jurisdiction to consider an appeal from an order granting a motion to compel arbitration in one forum and denying a motion to compel arbitration in another forum.

### A. Late Notice of Appeal

The notice of appeal in an accelerated appeal must be filed within 20 days after the judgment or order is signed.[6] The order denying Nemaha's motion to compel FINRA arbitration and granting Esposito's motion to compel AAA arbitration was signed on August 28, 2014. The notice of appeal was due twenty days later on September 17, 2014. Nemaha filed its notice of appeal on September 23, 2014. Although Nemaha filed a motion to reconsider the August 28, 2014 order, that motion did not extend the time for Nemaha to perfect its accelerated appeal.[7]

Nemaha filed a motion to extend the time to file its notice of appeal on September 24,

---

[6] TEX. R. APP. P. 26.1(b).

[7] TEX. R. APP. P. 28.1(b) ("Filing a motion for new trial, any other post-trial motion, or a request for findings of fact will not extend the time to perfect an accelerated appeal.").

2014,[8] and explained:

> Here, the notice of appeal was not filed immediately because it was hoped a motion for reconsideration would resolve the issue without the necessity of appeal. When reconsideration was denied, the deadline to file a Notice of Appeal was inadvertently missed due to a miscommunication between counsel and a miscalculation of the date on which the notice of appeal was due. The delay was not deliberate or intentional, but was the result of inadvertence, mistake or mischance.

Waiting on the outcome of a post-trial motion before perfecting an appeal is not a reasonable explanation of the need for an extension.[9] However, Nemaha's motion for extension, while conclusory and lacking specific facts, explains that the failure to file the notice of appeal was inadvertent due to a miscommunication between counsel and a miscalculation of the date the notice of appeal was due. This explanation is some indication the delay was not deliberate or intentional.[10] The record indicates Nemaha intended to appeal the trial court's ruling and the explanation in the motion for extension does not show a conscious or strategic decision to wait to file the notice of appeal.[11] Accordingly, we grant Nemaha's motion for extension of time to file the notice of appeal.

## B. Jurisdiction of Interlocutory Appeal

Because the contract between the parties evidences a transaction involving commerce, the Federal Arbitration Act (FAA) applies in this case.[12] While the FAA applies to substantive

---

[8] *See* TEX. R. APP. P. 26.3 (motion for extension must be filed within 15 days after deadline for filing notice of appeal).

[9] *See Jahner v. Jahner*, No. 05-15-00225-CV, 2015 WL 1910014, at *1 (Tex. App.—Dallas Apr. 28, 2015, no. pet. h.) (mem. op.) (decision to await outcome of hearing on motion to modify did not constitute reasonable explanation of a need for extension of time to file notice of appeal).

[10] *See Garcia v. Kastner Farms, Inc.*, 774 S.W.3d 668, 669 (Tex. 1989) ("any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake, or mischance").

[11] *See Jahner*, 2015 WL 1910014, at *1.

[12] 9 U.S.C. § 2 (2012); *see In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (noting FAA preempts only contrary state law).

issues, we apply Texas law to procedural matters.[13]

Pursuant to section 51.016 of the civil practice and remedies code, a party may appeal a judgment or interlocutory order in a matter subject to the FAA under the same circumstances as an appeal would be permitted under 9 U.S.C. § 16.[14] FAA section 16 permits appeals from orders denying a petition for an order directing arbitration to proceed.[15] But section 16 prohibits an appeal from an interlocutory order directing arbitration to proceed.[16] Generally, section 16 does not permit interlocutory appeals from orders favoring arbitration.[17]

The order here disposed of cross-motions to compel arbitration by granting Esposito's motion and impliedly denying Nemaha's cross-motion. Under section 16 and section 51.016, we have appellate jurisdiction over the denial of Nemaha's motion to compel arbitration before FINRA. However, the order also granted Esposito's motion to compel arbitration before the AAA.

In *Austin Commercial*, we faced a somewhat similar situation except we were not dealing with competing motions to compel arbitration.[18] Austin Commercial, the general contractor on a construction project, contracted with Carter & Burgess for architectural services.[19] After a dispute arose with Carter & Burgess, Austin Commercial moved to compel arbitration before the Civilian Board of Contract Appeals (CBCA) under its prime contract with the project owner. The subcontract between Austin Commercial and Carter & Burgess required arbitration pursuant to

---

[13] *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding); *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 394–95 (Tex. App.—Dallas 2009, pet. denied).

[14] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015); *CMH Homes v. Perez*, 340 S.W.3d 444, 449 (Tex. 2011); *Austin Commercial Contractors, L.P. v. Carter & Burgess, Inc.*, 347 S.W.3d 897, 900 (Tex. App.—Dallas 2011, pet. denied).

[15] 9 U.S.C. § 16(a)(1)(B); *id.* § 4.

[16] *Id.* § 16(b)(2).

[17] *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000); *Austin Commercial*, 347 S.W.3d at 900.

[18] *See Austin Commercial*, 347 S.W.3d at 899.

[19] *Id.*

the dispute resolution procedures in the prime contract, but in the absence of such procedures, all disputes would be resolved by AAA arbitration.[20]

Carter & Burgess did not seek arbitration; it opposed arbitration before either forum, arguing the CBCA did not have jurisdiction and Austin Commercial waived arbitration by engaging in litigation before requesting arbitration.[21] The trial court granted the motion to compel in part and denied it in part. The court compelled arbitration, but before the AAA rather than the CBCA.[22] We concluded we did not have appellate jurisdiction over this order under FAA section 16 and section 51.016 of the civil practice and remedies code.[23] However, we also concluded that Austin Commercial was entitled to mandamus relief from the order compelling arbitration before the AAA.[24] We determined Austin Commercial lacked an adequate remedy by appeal and the trial court clearly abused its discretion by compelling arbitration before AAA when the subcontract required arbitration according to the dispute resolution procedures in the prime contract.[25]

Nemaha requests that we consider its appellate brief a petition for writ of mandamus if necessary to review the trial court's order. We may consider an appeal as a petition for writ of mandamus if requested.[26] The requirements for mandamus relief are a clear abuse of discretion and the lack of an adequate remedy by appeal.[27] There is no adequate remedy by appeal when a

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 900.

[24] *Id.* at 901–02.

[25] *Id.*

[26] *See CMH Homes*, 340 S.W.3d at 452–54.

[27] *See Austin Commercial*, 347 S.W.3d at 901 (citing *In re Gulf Exploration, LLC*, 289 S.W.3d 836, 842 (Tex. 2009)).

party is erroneously denied its contracted-for arbitration rights under the FAA.[28]

Following *Austin Commercial*, we conclude we do not have appellate jurisdiction over that portion of the order granting Esposito's motion to compel arbitration.[29] Accordingly, we dismiss that portion of this appeal, but grant Nemaha's request that we treat its appeal as a mandamus petition as to the order granting the motion to compel. If Nemaha is a customer, it has a contractual right as a third party beneficiary to request arbitration under FINRA rules under Esposito's member agreement with FINRA. If that right is erroneously denied by ordering Nemaha to arbitrate before the AAA, Nemaha will lack an adequate remedy by appeal.[30] Thus, we conclude we have mandamus jurisdiction to consider whether the trial court abused its discretion by granting Esposito's motion to compel arbitration before the AAA.[31]

## STANDARD OF REVIEW

A party seeking to compel arbitration has the initial burden of establishing the parties agreed to arbitration and that the claims fall within the agreement's scope.[32] We review an order denying a motion to compel arbitration under an abuse of discretion standard.[33] We defer to the trial court's factual determinations by applying a no-evidence standard of review, but we review the trial court's legal determinations de novo.[34] Whether an arbitration agreement is enforceable is subject to de novo review.[35]

---

[28] *Id.* (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d at 780–81).

[29] *See Austin Commercial*, 347 S.W.3d at 900.

[30] *Id.* at 901.

[31] *Id.*

[32] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

[33] *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.).

[34] *Labatt*, 279 S.W.3d at 643; *Sidley*, 327 S.W.3d at 863.

[35] *Labatt*, 279 S.W.3d at 643.

ANALYSIS

## A. FINRA Rules

For many years, FINRA[36] and its predecessor adopted comprehensive rules regarding arbitration between FINRA members and their customers or employees.[37] As discussed above, FINRA members agree to arbitrate with their customers pursuant to the FINRA code and customers are third-party beneficiaries of the arbitration provision in the membership agreement.[38] It is undisputed that Esposito is a member of FINRA.

FINRA Rule 12200 provides:

Parties must arbitrate a dispute under the [FINRA] Code if:

- Arbitration under the [FINRA] Code *is either*:

    (1) Required by a written agreement, *or*

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member . . . .

---

[36] FINRA is a self-regulatory organization (SRO) under Section 15A of the Securities Exchange Act of 1934. 15 U.S.C. § 78*o*-3; *W. Va. Univ. Hosps.*, 660 F.3d at 648. It was created in 2007 through a consolidation of the National Association of Securities Dealers, Inc. (NASD) and the regulatory arm of the New York Stock Exchange Group, Inc. (NYSE). *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011).

[37] In 1975, Congress granted extensive power to the SEC to regulate rules adopted by FINRA and to ensure the adequacy of the arbitration procedures employed by SROs:

> Since the 1975 amendments to § 19 of the Exchange Act, however, the Commission has had expansive power to ensure the adequacy of the arbitration procedures employed by the SROs. No proposed rule change may take effect unless the SEC finds that the proposed rule is consistent with the requirements of the Exchange Act, 15 U.S.C. § 78s(b)(2); and the Commission has the power, on its own initiative, to "abrogate, add to, and delete from" any SRO rule if it finds such changes necessary or appropriate to further the objectives of the Act, 15 U.S.C. § 78s(c). In short, the Commission has broad authority to oversee and to regulate the rules adopted by the SROs relating to customer disputes, including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights.

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 233–34 (1987).

[38] *W. Va. Univ. Hosps.*, 660 F.3d at 649 ("A customer under the exchange's rules is entitled to invoke the arbitration provision 'as an intended third-party beneficiary' in a dispute with a member.").

FINRA R. 12200, 2015 WL 464978 (emphasis added).

Under the plain language of rule 12200, parties must arbitrate under the FINRA code if FINRA arbitration is required either by a written agreement *or* requested by a customer of a FINRA member.[39] The Agreement here does not provide for FINRA arbitration, but Nemaha, claiming to be a customer of a FINRA member, requested FINRA arbitration. Thus, if Nemaha is a customer of Esposito, an admitted FINRA member, Nemaha is entitled to demand arbitration pursuant to FINRA rules.[40]

The trial court's order indicates the parties and the court agreed that "if Nemaha is [a] 'Customer' of Esposito Securities, then the FINRA rules apply and this Court must send the case to FINRA arbitration per [Nemaha's] request." Thus, as the parties have narrowed the issue, if Nemaha is a customer, the dispute must be submitted to FINRA arbitration as requested by Nemaha, but if Nemaha is not a customer, the dispute should be submitted to AAA arbitration pursuant to the terms of the Agreement.

### B. Customer

The FINRA rules do not define the term "customer" other than by stating that a customer is not a broker or dealer as defined by the Exchange Act.[41] Courts that have considered the meaning of the term agree that "customer" should be given its ordinary meaning of someone

---

[39] "[I]f the rules of an exchange (or similar organization) require arbitration of customer disputes, a broker's membership obligation confers upon the customer an option to arbitrate as the exchange rules provide." *Id.* (quoting *Zinsmeyer*, 41 F.3d at 864); *see also UBS Fin. Services, Inc. v. Carilion Clinic*, 706 F.3d 319, 323 (4th Cir. 2013) (FINRA members are generally required to arbitrate under FINRA rules when such arbitration is requested by customers and the dispute "arises in connection with the business activities of the member").

[40] Citing *Phillips v. ACS Municipal Broker, Inc.*, 888 S.W.2d 872, 875 (Tex. App.—Dallas 1994, no writ), Esposito argues that FINRA rules do not constitute a contract in writing for arbitration. *Phillips* was decided solely under the Texas Arbitration Act and before the legislature granted appellate jurisdiction over arbitration proceedings under the FAA. *See id.* at 874. This case is governed by the FAA and, as discussed above, we have jurisdiction over both the appeal and the mandamus proceeding.

[41] *See* FINRA Rule 12100(i), 2015 WL 464972.

who buys goods or services.[42] Thus, "[t]he term 'customer' includes at least a non-broker or non-dealer who purchases, or undertakes to purchase, a good or service from a FINRA member."[43] By agreeing to accept a fee for its services, a FINRA member understands it may be compelled to arbitrate any disputes with a party to the agreement.[44] While this may not be a "comprehensive definition of the term, it captures virtually all customer relationships."[45]

The trial court's order indicates the court believed Nemaha took inconsistent positions in this case and in the FINRA arbitration. The court concluded Nemaha was not a customer because Nemaha took the position in its FINRA statement of claim that it had yet to purchase a service from Esposito. Nemaha's statement of claim, however, does not support this conclusion. Nemaha asserted it was a customer under FINRA Rule 12200 and entitled to arbitrate the dispute with Esposito under FINRA rules. Specifically, Nemaha alleged the Agreement was fraudulently induced because Esposito failed to disclose that it did not have expertise in obtaining initial capital for startup companies and that the transaction on which Esposito claimed a fee did not fall within the types of transactions described in the Agreement. Nemaha did not deny entering into the Agreement or receiving services from Esposito. Nemaha denied that those services resulted in a transaction for which a fee was due to Esposito under the terms of the Agreement. Thus, we conclude the record does not support the trial court's conclusion that Nemaha is precluded from

---

[42] *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014) (citing *W. Va. Univ. Hosps.*, 660 F.3d at 650 (citing several dictionary definitions)); *Carilion Clinic*, 706 F.3d at 325 ("the term 'customer' in Rule 12200 still retains its generally accepted meaning—'one that purchases a commodity or service.'").

[43] *W. Va. Univ. Hosps.*, 660 F.3d at 650; *see Abbar*, 761 F.3d at 275 ("a 'customer' under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member"); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014) ("'customer' is a non-broker and non-dealer who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities"), *cert. denied sub nom. City of Reno, Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014); *Carilion Clinic*, 706 F.3d at 325 (a "customer" is "one, not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are covered by FINRA's regulation, namely the activities of investment banking and the securities business.").

[44] *Abbar*, 761 F.3d at 275 (citing *W. Va. Univ. Hosps.*, 660 F.3d at 650).

[45] *Id.*

claiming customer status by its allegations in the FINRA arbitration.

Esposito argues that Nemaha is not a customer because it never "purchased"—that is paid for—the services allegedly provided by Esposito. According to Esposito, a completed purchase or payment is required to become a customer, relying on *Abbar* and *Morgan Keegan*. However, the controlling factor in those cases was not a completed purchase or payment of a fee, but direct dealings between the alleged customer and the member. In *Abbar* and *Morgan Keegan*, the alleged customers did not contract directly with the member to purchase any goods or services. Abbar received services from Citi NY, a FINRA member, but he did not purchase those services from Citi NY because his contracts were with Citi UK and the fee for all services rendered by Citigroup personnel was paid to Citi UK.[46] The Second Circuit affirmed the district court's finding that Abbar was not a customer because "Abbar never held an account with the FINRA member and (notwithstanding his argument to the contrary) never purchased any goods or services from it."[47] Contrary to Esposito's contention that payment is required, the Second Circuit recognized in *Abbar* that a "simple, predictable, and suitably broad definition" of "customer" is necessary,[48] and that a "customer" includes one who "undertakes to purchase a good or service from a FINRA member."[49]

In *Morgan Keegan*, the alleged customers purchased bond funds underwritten by Morgan Keegan from a third party through their own broker, who was not affiliated with Morgan Keegan.[50] They filed a FINRA arbitration proceeding against Morgan Keegan for alleged

---

[46] *Id.*.

[47] *Id.*

[48] *Id.* at 276.

[49] *Id.* (quoting *W. Va. Univ. Hosps.*, 660 F.3d at 650).

[50] *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562, 564 (4th Cir. 2013).

securities fraud regarding the bond funds.[51] The Fourth Circuit concluded the investors were not customers of Morgan Keegan because they "did not have a contractual relationship with Morgan Keegan, and did not purchase from Morgan Keegan services or commodities, related to investment banking or the securities business.[52]

Unlike those cases, Nemaha entered into a contract with Esposito to purchase its services for a fee. The basis of this dispute is Esposito's claim that it provided those services to Nemaha and Nemaha refused to pay for them. By "undertaking to purchase" those services directly from Esposito for a fee, Nemaha became a customer.[53]

Esposito also contends no case has decided the customer status solely from the face of an agreement, but the Second Circuit did just that in *West Virginia University Hospitals, Inc.*[54] The court noted that the agreements between the parties reflected an undertaking by WVUH to pay UBS a fee for its services and concluded, "In view of that undertaking and a definition of customer that at least includes an entity that undertakes to purchase a good or service, WVUH became UBS's customer under Rule 12200 by contracting with UBS to obtain auction services for a fee."[55]

We conclude the Agreement represents an undertaking by Nemaha to purchase financial services from Esposito for a fee. Because the definition of customer "at least includes an entity that undertakes to purchase a good or service"[56] from a FINRA member, Nemaha became

---

[51] *Id.*

[52] *Id.* at 567, 568; *See also Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386–87 (4th Cir. 2013) (investors were not customers under rule 12200 where there was no evidence of a contractual relationship with member regarding the transaction).

[53] *See Abbar*, 761 F.3d at 275; *W. Va. Univ. Hosps.*, 660 F.3d at 650.

[54] *W. Va. Univ. Hosps.*, 660 F.3d at 650.

[55] *Id.*; *see also Abbar*, 761 F.3d at 276 (citing *W. Va. Univ. Hosps.*, 660 F.3d at 650 as noting that a customer may also be one who "undertakes to purchase[] a good or service from a FINRA member").

[56] *W. Va. Univ. Hosps.*, 660 F.3d at 650.

Esposito's customer under rule 12200. The trial court abused its discretion by finding Nemaha was not a customer.

Esposito next argues that the obligation to arbitrate under FINRA Rule 12200 can be superseded by a contract. Indeed, there is authority for this proposition.[57] However, in light of the recital in the trial court's order that FINRA arbitration is required if Nemaha is a customer, we need not decide whether the Agreement supersedes the customer's right to request arbitration under FINRA rules.

We sustain Nemaha's sole issue.

## CONCLUSION

We conclude Nemaha is a customer of Esposito, a FINRA member, and entitled to request arbitration under FINRA Rule 12200. Accordingly, the trial court erred by denying Nemaha's motion to compel arbitration. We reverse that portion of the trial court's order, render judgment granting Nemaha's motion to compel arbitration, and order all disputes between the parties proceed to arbitration before FINRA pursuant to FINRA rules. We conditionally grant the petition for writ of mandamus as to the portion of the order granting Esposito's motion to compel

---

[57] The Second Circuit has said:

> In particular, as relevant here, "different or additional contractual arrangements for arbitration can supersede the rights conferred on [a] customer by virtue of [a] broker's membership in a self-regulating organization such as [FINRA]." *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 864 (2d Cir.1994) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir.1990)).

*In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) (alteration in original); *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 214–15 (2d Cir. 2014) (FINRA arbitration rules were superseded by forum selection clauses requiring "all actions and proceedings" to be brought in federal court); *City of Reno*, 747 F.3d at 741 ("As a threshold matter, we agree with Goldman that a contract between the parties can supersede the default obligation to arbitrate under the FINRA Rules."); *Carilion Clinic*, 706 F.3d at 328 ("At the outset, we agree with UBS and Citi that the obligation to arbitrate under FINRA Rule 12200 can be superseded and displaced by a more specific agreement between the parties."); *Luckie v. Smith Barney, Harris Upham & Co., Inc.*, 999 F.2d 509, 514 (11th Cir. 1993) ("arbitration provisions of a more specific customer agreement can supersede the arbitration provisions of the AMEX Constitution, namely the AMEX Window"); *Roney & Co. v. Goren*, 875 F.2d 1218, 1223 (6th Cir. 1989) (Customer's "decision to sign the customer agreement providing for arbitration solely before the NYSE was not made involuntarily or under any misleading circumstances; therefore the parties, including appellant, are contractually bound to honor their mutual predispute choice of NYSE arbitration.").

arbitration and direct the trial court to vacate that portion of the order. We are confident the district court will comply without delay. The writ will issue only if it fails to do so.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

141223F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

MICHAEL MORFORD D/B/A NEMAHA
WATER SERVICES, GEFFREY ARNOLD
MCFALLS, INDIVIDUALLY D/B/A
NEMAHA WATER SERVICES, NEMAHA
WATER SERVICES, LP, NEMAHA
WATER SERVICES GP, LLC, NEMAHA
WATER SERVICES OK-1702, LLC, AND
NEMAHA SERVICES HOLDING
COMPANY, LLC, Appellants

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-05795.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Whitehill participating.

No. 05-14-01223-CV          V.

ESPOSITO SECURITIES, LLC, Appellee

In accordance with this Court's opinion of this date, that portion of the trial court's August 28, 2014 Order Granting Plaintiff's Motion to Compel Arbitration denying appellants' motion to compel arbitration is **REVERSED** and judgment is **RENDERED** that:

Appellants MICHAEL MORFORD D/B/A NEMAHA WATER SERVICES, GEFFREY ARNOLD MCFALLS, INDIVIDUALLY D/B/A NEMAHA WATER SERVICES, NEMAHA WATER SERVICES, LP, NEMAHA WATER SERVICES GP, LLC, NEMAHA WATER SERVICES OK-1702, LLC, AND NEMAHA SERVICES HOLDING COMPANY, LLC's motion to compel arbitration is **GRANTED** and all disputes between the parties shall proceed to arbitration before FINRA pursuant to FINRA rules.

It is **ORDERED** that appellants MICHAEL MORFORD D/B/A NEMAHA WATER SERVICES, GEFFREY ARNOLD MCFALLS, INDIVIDUALLY D/B/A NEMAHA WATER SERVICES, NEMAHA WATER SERVICES, LP, NEMAHA WATER SERVICES GP, LLC, NEMAHA WATER SERVICES OK-1702, LLC, AND NEMAHA SERVICES HOLDING COMPANY, LLC recover their costs of this appeal from appellee ESPOSITO SECURITIES, LLC.

–16–

Judgment entered this 18th day of September, 2015.